Good afternoon. My name is John Scanlon. I'm representing Mr. Gonzalez. I received a memo from the court that they wanted to address a couple cases, and I'd like to focus on those cases, and particularly the most important one we feel believes supports our position is the Turbin case. The reason that we believe that it supports the – our position is that if you read Turbin, the touchstone of the Fourth Amendment is reasonableness. So they talk about that each case is fact-specific inquiry, and the court has to look at the totality of the circumstances. Well, all of that's been true forever. I mean, the critical thing about that case is that it basically, as George said, reasonableness turns in effect on the amount of time that it takes to – for all this to go down. And there I think it was 14 minutes, and here I think it was 15, which surely isn't constitutionally significant. Well, I have to disagree with the court on that, Your Honor. 60 seconds is constitutionally significant. Well, but the reason is because they're still talking about the totality of circumstances, and it's not limited just to time, as I read the case. We're looking at a case here where the extension of time of the search was not just an innocent, we-have-to-have questioning because we believe that something might have happened. What we have here is questioning that was extended for several reasons. One was that there was, you know, somehow my client fit a particular profile. Number two was that this extension was extended because they wanted to make an illegal arrest of the alleged co-conspirator. And the third one, which was the most – which I feel is the most distressing, is the fact that they wanted to extend the search because – and this was a summary judgment motion in which all facts have to be read in favor of my client, which was you want some games, we're going to show you some games. So I don't read Turbin as saying that the extension just merely relates to the period of time. And if you're reading it that way, then I think the minority's opinion in that case should give this Court pause and start thinking maybe we should reverse Turbin. Because if you're saying that for any reason at all, even for – I'm saying we can't reverse Turbin. Huh? We, as a three-judge panel, cannot reverse Turbin. We're bound by Turbin. But this case can be distinguished from Turbin. That's your first point, but I just want to make sure you understand that we don't, as a panel of the Court, reverse our colleagues' opinions. We may find ways to distinguish them, but only in endgame. Okay. But that's my point, Your Honor. I don't think that the Court can turn a blind eye to the fact that there were impermissible reasons here. If you read Turbin, the touchstone is reasonableness of the officer's conduct. And if we look at the officer's conduct and we pled the reasonableness standard – and I don't think it's necessary for us to – Are you asking us to look to the motivation, subjective – Absolutely. Are you looking at the objective facts that actually transpired? We're generally not supposed to look at the motivation of police officers because that always will lead to a dispute of fact. Everybody can conjure improper motivation. The question here is – and granted that they were taking the facts, as you allege, some over-eager or nasty cops or whatever – but the point is when we look at the objective facts, the duration of all of this seems to be the accepted lapse time. And it doesn't seem to have been what would fall under the Supreme Court jurisprudence, a prolonged detention consistent with the original stop. So where is it, aside from the statement of you want gains, what else is there that we have to look at? Well, we have gains and we also have the unlawful arrest of the supposed co-conspirator. What has that got to do with your client? Huh? He doesn't have statements. Because it prolonged the duration. He doesn't have standing to complain about that. It prolonged the duration of the stop. You know, as far as the duration of the stop, we know that the initial stop was at 11.15 and we know that Ms. Fleming's statement is at 23.30 hours or 11.30. And the lower court did focus on that time frame and indicated it was approximately 15 minutes. In reading your materials, it doesn't appear that that's questioned. In other words, is that what we're talking about, approximately 15 minutes between the time of the stop of the vehicle and your client being placed under arrest? Yeah. There's no dispute over that. But, again, it's the totality of the circumstances. If the purpose of extending it to 15 minutes, in my view, was simply questioning, then, yes, it would have been justified. But that's not what we have here. We also have the additional. What do we have different? Like in Turwin, we had a situation where the tape recording was stopped. You know, they stop the vehicle and then they go on to this independent investigation, asking him about drugs and they're taping the conversation and so forth. So that obviously added some period of time, time that would be required simply for the traffic stop. But then the question is whether it was unduly or unreasonably prolonged. In other words, it isn't a question of whether it's longer. It's a question of whether it's unreasonably longer for Fourth Amendment purposes. Would you agree with that? No, I wouldn't. Because when I read that case, I don't see anything wrong with asking. You know, I'm not sure what state that came from, but I don't see anything unreasonable about asking questions. I don't see anything unreasonable about even turning on a tape recorder in another state. But what I do see as unreasonable is something where you're arresting people illegally. You're subjecting them to coercive questioning. It's not just merely questioning in this case. The questioning was ---- Mr. Snell, we've tried to ask you now three times. What does that have to do with Mr. Gonzales? He lacks standing to complain about anything that happened to Ms. Fleming, doesn't he? Well, I just have to disagree because his stop was prolonged. I assume you do, but why? It's your argument that he can't be held while they are questioning the passenger in his car? He can be held for questioning the passenger in his car. But I don't believe that he can be held for coercive questioning where one person is illegally placed under arrest and then they're both told the first one who makes a confession doesn't go to jail. And you're saying it was okay for them to take her out of the car, put her in the police car, and examine her there and hold him pending the outcome of that? And then your attack would be on the manner in which they questioned her? No, no. So what is it? Both. Both the manner in which they questioned her and also putting her in the car. I just want to break it down. Okay. Okay. They stop him. Yeah. He pulls her out of the car, puts her in the back, and questions her. He pulls her out of the car. It's a man that occupies, let's say, it takes 12 minutes. So the entirety of the stop now becomes 20 minutes. Right. All right? So are you saying that even if there was a perfectly legitimate reason to question her about prostitution and the officer was abundantly polite and she finally, after 12 minutes, confesses to being a prostitute, you would still be here arguing on behalf of your client that he had been held for an unconstitutionally long period of time? If she was illegally arrested, yes. Okay. So it turns on whether her arrest was illegal. It turns on that. And I would also argue that it was the nature of the questioning. If it's just simply questioning to gather information, then I would say yes, but this kind of questioning that took place in this case, which was, you know, the first one that confesses goes to jail. If you look at the totality of those circumstances, I'm saying that it's unreasonable. Okay. I've got 30 seconds left. I'd like to reserve it. Mr. Miller. Good morning. May it please the Court. My name is Thomas Miller, and I'm here on behalf of the City of Federal Way and one of its police officers, Sean Swanson. As a preliminary matter, plaintiff brought this lawsuit alleging not only a Fourth Amendment violation but also a Fourteenth Amendment violation and a Monell claim. All of those claims were dismissed on summary judgment. You'll see from reviewing the briefing that plaintiff literally devoted no briefing to the Fourteenth Amendment claim, asserting that it's somehow the officer infringed his right to move about freely. Frankly, whether that right is even acknowledged in the Ninth Circuit is still up in the air, the right of intrastate travel, as is pointed out in the Nunez case. Nonetheless, that's more of a seizure claim that is properly analyzed under the Fourth Amendment anyway, so that claim is properly dismissed in this matter, as is the Fourth Amendment claim. As you were all questioning about the Turvin case, essentially what Turvin did was this Court held that the Mendez ruling does not necessarily mean that unrelated questions will unreasonably prolong the stop. In other words, you can ask unrelated questions, and as long as it's overall reasonable, the stop will still be constitutional. In this case, it's undisputed that Ms. Fleming provided Officer Swanson with a flat-out admission that she was offered $45, in other words, a hotel room, in order to engage in sex with the plaintiff. Officer Swanson questioned her about this and received a sworn written statement from her. That alone provides the reasonable suspicion that criminal activity was afoot in this matter. That's not disputed here. What's also not disputed is that the plaintiff has no knowledge, and there's no evidence in this record over how the statement was procured. He just asserts conclusively that the statement was coerced from Ms. Fleming. Well, he can't know that. He's in his car. She's in Officer Swanson's car while the questioning is occurring. So anything that he's saying about how this confession was allegedly taken is simply a conclusory allegation that can't generate a material fact on summary judgment. The law on that is very clear, going all the way back to the Celotex case. Moreover, even if we assume there's a Fourth Amendment violation in this case, we would then get to the second prong of the Satie v. Katz analysis. Would a reasonable officer, faced with the same facts and circumstances and law known to him at the time, have believed Officer Swanson's conduct to be lawful? In other words, would a reasonable officer who initiates a lawful traffic stop that's not in dispute here, he had a broken taillight, plaintiff admits that, that's not questioned, then proceeds to observe that the female passenger is not wearing a seatbelt and is much younger than the plaintiff, and asks her, asks him what her name is. He doesn't know her last name. The officer's radar antenna goes up. He starts suspecting that there may be prostitution happening here, proceeds to question them, gets a confession. Based on that confession, arrests the plaintiff. Would a reasonable officer believe that to be lawful? The question is, that question answered in this case is undoubtedly. That is a reasonable situation that virtually I don't think any officer would think is unlawful at all. Again, now, an argument here, Plaintiff's counsel made it clear that it's just the amount of time that he takes issue with in this case. And in the Turbin case, as Judge Fisher, you pointed out, I believe, that stop was 14 minutes. And during that time, the officer stopped. He heard that there was a rolling meth lab. He stopped and started recording. Does it make any difference what percentage of the time, the totally lapsed time, should be allocated to the traffic stop and what to the independent investigation? No. Nothing in Turbin suggests that. And I haven't seen anything in either the Mendez or the Mueller v. Manna, which is the Supreme Court case from 2005 that basically overturned the Valenzuela opinion out of this Court, which I believe, Judge Fisher, you authored. Partially overturned. Partially. Yes. Thank you. Sorry about that. I'm not giving up on reasonable suspicion. In this case, no. First of all, there's no evidence of how long was devoted to the standard traffic stop and setting for the tail light out versus how much time was devoted towards investigating the possible solicitation offense. Nonetheless, in this entire time, this 15-minute interval, which is undisputed in this record, the officer first stopped the vehicle, obtained driver's license registration, went back to his vehicle, ran all the warrants checks, the license checks, came back, cited Ms. Fleming for being a passenger, not wearing her seat belt, cited the plaintiff for driving with a broken tail light, and also uncovered prostitution that's going on in his presence. And we know from the other case that he had some basis for it. Exactly. All right. Based on her confession from one party. And as the Court properly noted. Well, actually backing up. He asked her because he had some suspicion that there was prostitution before she confessed. Exactly. And the Turbin opinion is significant because he didn't need to have a reasonable suspicion in order to engage in that line of questioning. And once he did engage in that line of questioning, he got the reasonable suspicion. I mean, here the officer thought that it was peculiar, given the age difference, the hour, the fact that the driver only knew her first name as Summer. So he had an escalating basis upon which to suspect that prostitution was afoot. Yes? That's right. Okay. You're not saying that you can stop somebody for a tail light and you've got an automatic 15 minutes to start going on a fishing expedition, are you? Well, you know, the way I read the opinions in the Mendez case, that's sort of what happened. You know, it started off as just a standard traffic site, and he asked the plaintiff in that case, or the defendant, about his tattoos. And all of a sudden he is realizing that this person is part of a gang and that the person has a weapon. So that was a complete fishing expedition, which was ruled to be constitutional. You don't write a ticket in 10 minutes and then you've got another 5 or 10 minutes without any basis whatsoever to start asking people about whatever comes to mind, and in the 19th minute you may suddenly hit on something. Well, I think that's fair to say. You don't need to go that far in this case, do you? You really don't, because as soon as he got up to the vehicle, he saw a much younger woman, the reasonable suspicion is starting to build, he asks just a few innocuous questions. Do you know her name? Her name's Summer. And then it goes from there. And one tangential note that I'd just like to raise with the Court, if the Court's so interested, the State law claims for false arrest and false imprisonment were tried to an arbitrator this summer, and we received a defense verdict, which arguably collaterally stops the plaintiff from even challenging the lawfulness of the arrest. Well, you haven't raised that on the appeal. Correct. That's not an issue. Is there anything else with respect to the actual issues that are on appeal that you feel like you need to say? Well, the plaintiff raised a 56-F motion in his response to summary judgment. And one factor that's key there, if you look at the briefing, it's all geared towards this First Amendment claim, which frankly was never asserted in the complaint. It was not properly before. It wasn't properly before the district court, and therefore it's not properly before this Court. But how wasn't it asserted in the complaint? It's not asserted in the complaint. No, but how? In other words, there's two ways you can assert a cause of action. Usually they're combined. One, you would indicate there's violation of the First Amendment, and then you set forth the allegations that supposedly support that claim. Right. Here, is there anything in the complaint at all that would provide you with notice? Not one word. The word speech is not in the complaint. The words First Amendment are not in the complaint. There's absolutely nothing that put the defendants on notice that there was some purported First Amendment claim. Regardless, if there's a case, the Calamus County, I believe it is, that says that the law was not clearly established on that anyway, or an absence of probable cause was required to sustain a First Amendment retaliation under the Fourth Amendment. Regardless, plaintiff has to say. That would only protect the – that would only protect Officer Swanson. Right. It would have no impact on Monell liability. And there's no evidence of an unconstitutional customer policy. And the plaintiff also had seven months to depose Officer Swanson and did not do that in the First Amendment judgment. My time is up. Thank you very much. Mr. Miller. I've got 28 seconds to one thing. He did say that it was uncontested that he paid her $47 for sex, and that's not what the record shows. The record shows that he's paid $45 for a room. And even that was in her testimony. So what we have here in establishing probable cause. Her statement, though, doesn't she say that he offered her $45 for sex? No, that never happened. She said that it was $45. He purchased the room for $45. So, again, we're talking about, well, if you buy something for a woman and she thinks that sex is ultimately on your mind, does that establish probable cause? We're saying that doesn't either. But he misstated the record. And I think my time is up. All right. Thank you, Mr. Snell. Thank you, counsel. The matter just argued will be submitted. We'll next to your argument in McKay.
judges: Rymer, Fisher, Hurley